JONATHAN ROGER OCHOA #292451
Name and Prisoner/Booking Number

A.S.P.C. Florence/Central Unit
Place of Confinement

P.O. BOX 8200
Mailing Address

Florence AZ 85132
City, State, Zip Code

☒ FILED ___ LODGED
___ RECEIVED ___ COPY

FEB 11 2021

CLERK U S DISTRICT COURT
DISTRICT OF ARIZONA
BY_____ DEPUTY

**(Failure to notify the Court of your change of address may result in dismissal of this action.)**

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF ARIZONA

JONATHAN ROGER OCHOA,
(Full Name of Petitioner)

Petitioner,

v.

David Shinn,
(Name of the Director of the Department of
Corrections, Jailor or authorized person having custody
of Petitioner),

Respondent,
and

The Attorney General of the State of Arizona,

Additional Respondent.

CASE NO. **CV21-00274-PHX-DGC--MTM**
(To be supplied by the Clerk)

**PETITION UNDER 28 U.S.C. § 2254
FOR A WRIT OF HABEAS CORPUS
BY A PERSON IN STATE CUSTODY
(NON-DEATH PENALTY)**

## PETITION

1. (a)  Name and location of court that entered the judgment of conviction you are challenging: _____
   YUMA COUNTY SUPERIOR COURT
   YUMA ARIZONA

   (b)  Criminal docket or case number: CR2012 00498

2. Date of judgment of conviction: JULY 2, 2014

3. In this case, were you convicted on more than one count or crime?   Yes ☑   No ☐

4. Identify all counts and crimes for which you were convicted and sentenced in this case: Count two - conspiracy to commit possesion of narcotic drugs for sale, count three - conspiracy to commit armed Robbery with a Deadly Weapon, count Five - First Degree Murder

5. Length of sentence for each count or crime for which you were convicted in this case: count Five - LIFE, count three 15.75 years, count two 15.75 years.

6. (a) What was your plea?
   Not guilty ☑
   Guilty ☐
   Nolo contendere (no contest) ☐

   (b) If you entered a guilty plea to one count or charge, and a not guilty plea to another count or charge, give details: _____

   (c) If you went to trial, what kind of trial did you have?  (Check one) Jury ☑ Judge only ☐

7. Did you testify at the trial?     Yes ☐     No ☑

8. Did you file a direct appeal to the Arizona Court of Appeals from the judgment of conviction?
   Yes ☑     No ☐

   If yes, answer the following:

   (a) Date you filed: February 20, 2015

   (b) Docket or case number: 1 CA - CR 14-0519

   (c) Result: Affirmed in Part, Vacated in Part

   (d) Date of result: 9/22/15

   (e) Grounds raised: 1st whether appelant can be found guilty of two conspiracies 2nd whether trial court abused its descretion in denying appelants motion for Aquital because of insufficent evidence 3rd whether Appelants conviction must be overturned because court abused its descretion in Allowing improper character evidence masked as "intrinsic Evidence 4th whether cumulative error

**Attach, if available, a copy of any brief filed on your behalf and a copy of the decision by the court.**
throughout proceedings deprived Appelant of a fair trial.

2

9. Did you appeal to the Arizona Supreme Court? Yes ☑    No ☐

If yes, answer the following:

(a) Date you filed: _10/26/2015_

(b) Docket or case number: _CR-15-0365-PR_

(c) Result: _Denied_

(d) Date of result: _March 11, 2016_

(e) Grounds raised: _I a Layman proceeded
proper and raised issues identical to the
appeal issues raised in the court of appeals_

Attach, if available, a copy of any brief filed on your behalf and a copy of the decision by the court.

10. Did you file a petition for certiorari in the United States Supreme Court?    Yes ☐    No ☑

If yes, answer the following:

(a) Date you filed: _____

(b) Docket or case number: _____

(c) Result: _____

(d) Date of result: _____

(e) Grounds raised: _____

Attach, if available, a copy of any brief filed on your behalf and a copy of the decision by the court.

11. Other than the direct appeals listed above, have you filed any other petitions, applications or motions concerning this judgment of conviction in any state court? Yes ☑    No ☐

If yes, answer the following:

(a)  First Petition.

   (1)  Date you filed: 1/25/2018

   (2)  Name of court: Yuma County Superior Court

   (3)  Nature of the proceeding (Rule 32, special action or habeas corpus): Rule 32

   (4)  Docket or case number: CR 201200498

   (5)  Result: Denied

   (6)  Date of result: 4/26/2019

   (7)  Grounds raised: #1 Newly Discovered evidence #2 Actual innocence #3 Ineffective Assistance of counsel

**Attach, if available, a copy of any brief filed on your behalf and a copy of the decision by the court.**

(b)  Second Petition.

   (1)  Date you filed: _____

   (2)  Name of court: _____

   (3)  Nature of the proceeding (Rule 32, special action or habeas corpus): _____

   (4)  Docket or case number: _____

   (5)  Result: _____

   (6)  Date of result: _____

   (7)  Grounds raised: _____

**Attach, if available, a copy of any brief filed on your behalf and a copy of the decision by the court.**

(c) Third Petition.

    (1) Date you filed: _____

    (2) Name of court: _____

    (3) Nature of the proceeding (Rule 32, special action or habeas corpus): _____

    (4) Docket or case number: _____

    (5) Result: _____

    (6) Date of result: _____

    (7) Grounds raised: _____

    _____

    _____

    _____

    _____

    **Attach, if available, a copy of any brief filed on your behalf and a copy of the decision by the court.**

(d) Did you appeal the action taken on your petition, application, or motion to the:

|   | | <u>Arizona Court of Appeals:</u> | | <u>Arizona Supreme Court:</u> | |
|---|---|---|---|---|---|
| (1) First petition: | Yes ☑ | No ☐ | Yes ☑ | No ☐ |
| (2) Second petition: | Yes ☐ | No ☐ | Yes ☐ | No ☐ |
| (3) Third petition | Yes ☐ | No ☐ | Yes ☐ | No ☐ |

(e) If you did not appeal to the Arizona Court of Appeals, explain why you did not: _____

_____

_____

_____

_____

_____

12. For this petition, **state every ground on which you claim that you are being held in violation of the Constitution, laws, or treaties of the United States.** Attach additional pages if you have more than four grounds. State the <u>facts</u> supporting each ground.

    <u>**CAUTION:** To proceed in the federal court, you must ordinarily first exhaust (use up) your available state-court remedies on each ground on which you request action by the federal court. Also, if you fail to set forth all the grounds in this petition, you may be barred from presenting additional grounds at a later date.</u>

**GROUND TWO:** Court abused its descretion in allowing the state to present improper character evidence. masked as "intrinsic Evidence" constituting such prejudice that Appelant was deprived of a fair trial

(a)  Supporting FACTS (Do not argue or cite law.  Just state the specific facts that support your claim.):

THE TRIAL was a premeditated Murder trial and All THe testimony was of a drug traffickng group and spoke of dealing's not connected to The night of the crime, the murder itself or petitioner in anyway other than to make petitioner look Like a bad guy

(b) Did you present the issue raised in Ground Two to the Arizona Court of Appeals?  Yes ☑    No ☐

(c) If yes, did you present the issue in a:
    Direct appeal    ☑
    First petition     ☐
    Second petition  ☐
    Third petition   ☐

(d)  If you did not present the issue in Ground Two to the Arizona Court of Appeals, explain why: _____

(e) Did you present the issue raised in Ground Two to the Arizona Supreme Court?  Yes ☑    No ☐

7

**GROUND ONE:** Actual Innocence

(a)  Supporting FACTS (Do not argue or cite law.  Just state the specific facts that support your claim.):

All evidence presented to the jury were improper character evidence masked as intrinsic evidence and was only connected to petitioner because what was stated by codefendant M Bustamante. Bustamante was not called by trial counsel to testified after being informed Bustamantes willingness. Bustamante later in evidentiary hearing 2/7/19 confessed he committed the murder and petitioner was not there stating other individuals were the ones actually with him. Petitioner has several alibi witnesses stating he was home during the time the crimes were being committed. The evidence that the jury heard gave the time place of the murder, type of description of men with weapons. A victim beaten with a bat. Well if Pena states witness testifies that Bustamante, one Carlos, & petitioner show up same time and place of the murder fit the description and also they state they just beat up a guy with bats. That testimony is what convicted petitioner. Well there was an interview done between F pena & Bustamantes Counsel & the state. He states the same story only petitioner was not mentioned, states he didn't physically see him. This was never disclosed to petitioner. After presenting interview to F pena admits to perjury and states he was told to testify with petitioner in his story. There are so many miscarriages of justice from the trial turning into a "Drug trafficking" trial to use improper character evidence, then Brady violation, Actual Innocence is evident

(b) Did you present the issue raised in Ground One to the Arizona Court of Appeals?  Yes ☑    No ☐

(c) If yes, did you present the issue in a:
   Direct appeal         ☐
   First petition        ☑
   Second petition       ☐
   Third petition        ☐

(d)  If you did not present the issue in Ground One to the Arizona Court of Appeals, explain why: _____

(e) Did you present the issue raised in Ground One to the Arizona Supreme Court?  Yes ☐        No ☑

6

**GROUND THREE:** ~~That accepts new~~ Newly Discovered Evidence

(a)  Supporting FACTS (Do not argue or cite law.  Just state the specific facts that support your claim.):

The Dramatic testimony by Bustamante brought light on what Really wasn't known. His statements Corroborate what was Also said by F. Pena in an ~~Brady violation~~ interview done by Bustamantes counsel ~~of the State~~. Also New evidence is A new letter notarized by F. Pena.

(b) Did you present the issue raised in Ground Three to the Arizona Court of Appeals?  Yes ☑        No ☐

(c) If yes, did you present the issue in a:
- Direct appeal         ☐
- First petition        ☑
- Second petition       ☑
- Third petition        ☐

(d)  If you did not present the issue in Ground Three to the Arizona Court of Appeals, explain why: _____

(e) Did you present the issue raised in Ground Three to the Arizona Supreme Court?  Yes ☐        No ☐

**GROUND FOUR:** Inneffective Assistance of Counsel

(a)  Supporting FACTS (Do not argue or cite law.   Just state the specific facts that support your claim.):

D. Thorn took one year to disclose Alibi Defense when he was aware of them and only interviewed them after one year in turn The state. Intered it was made up at the last minute. D. Thorn failed to prepare witnesses and investigate what M Bustamante was wanting to testify to. He couldn't know because no attempt to contact Bustamante was made A. Levitt During her investigation of the P.C.R. proceed aint thorn F Feng. He stated to the P.I counsel Hired, that he lied on the stand and would sign an affidavit & testify on what he Really seen. After a while Rena became Hostile with the P.I. The witness Rena should of been subpeona to testify to what was stated on Trial the "pretrial interview" and His interview with the P.I. Also, A Levitt told petitioner that the Brady Violation was Ruled on then 8 months later Directed petitioner to claim I.A.C. on her, so because she did't present or get a ruling on the Brady Violation Brady Violation

(b) Did you present the issue raised in Ground Four to the Arizona Court of Appeals?   Yes ☑      No ☐

(c) If yes, did you present the issue in a:
      Direct appeal      ☐
      First petition      ☑
      Second petition   ☐
      Third petition    ☐

(d)  If you did not present the issue in Ground Four to the Arizona Court of Appeals, explain why: _____

(e) Did you present the issue raised in Ground Four to the Arizona Supreme Court?   Yes ☐      No ☑

**Please answer these additional questions about this petition:**

13. Have you previously filed any type of petition, application or motion in a federal court regarding the conviction that you challenge in this petition?          Yes ☐          No ☑

    If yes, give the date of filing, the name and location of the court, the docket or case number, the type of proceeding, the issues raised, the date of the court's decision, and the result for each petition, application, or motion filed.   Attach a copy of any court opinion or order, if available: _____

_____

_____

_____

_____

_____

14. Do you have any petition or appeal <u>now pending</u> (filed and not decided yet) in any court, either state or federal, as to the judgment you are challenging?          Yes ☑          No ☐

    If yes, give the date of filing, the name and location of the court, the docket or case number, the type of proceeding, and the issues raised: CR2012 0049B Post Conviction Relief Petition filed in State Court 2/5/2021

_____

_____

_____

_____

15. Do you have any future sentence to serve after you complete the sentence imposed by the judgment you are challenging?   Yes ☐          No ☑

    If yes, answer the following:

    (a) Name and location of the court that imposed the sentence to be served in the future:

_____

_____

_____

    (b)   Date that the other sentence was imposed: _____

    (c)   Length of the other sentence: _____

    (d)   Have you filed, or do you plan to file, any petition challenging the judgment or sentence to be served in the future?          Yes ☐          No ☑

16. TIMELINESS OF PETITION: If your judgment of conviction became final more than one year ago, you must explain why the one-year statute of limitations in 28 U.S.C. § 2244(d) does not bar your petition.*

_____
_____
_____
_____
_____
_____
_____
_____
_____
_____

*Section 2244(d) provides in part that:

(1)   A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court.   The limitation period shall run from the latest of-

(A)   the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

(B)   the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;

(C)   the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(D)   the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

(2)   The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

17. Petitioner asks that the Court grant the following relief: Convictions overturned, sentences vacated and new trial granted

_____

or any other relief to which Petitioner may be entitled.   (Money damages are not available in habeas corpus cases.)

I declare under penalty of perjury that the foregoing is true and correct and that this Petition for Writ of Habeas Corpus was placed in the prison mailing system on _2 · 5 · 202 1_ (month, day, year).

_____
**Signature of Petitioner**

_____     _____
Signature of attorney, if any                    Date

11

LAW OFFICES OF
**HARRIETTE P. LEVITT, PLLC**
*Attorney at Law*
1147 N Howard. Blvd.
TUCSON, ARIZONA 85716
(520)624-0400
Fax (520) 622-3308

Bar No. 7077
hplevittlaw@gmail.com
Attorney for Defendant

IN THE SUPERIOR COURT OF THE STATE OF ARIZONA

IN AND FOR THE COUNTY OF YUMA

| | | |
|---|---|---|
| STATE OF ARIZONA, | ) | No. CR 201200498 |
| Plaintiff/Respondent, | ) | |
| vs. | ) | **PETITION FOR POST-CONVICTION RELIEF** |
| JONATHAN ROGER OCHOA, | ) | |
| Defendant/Petitioner. | ) | (Assigned to Judge Rouff) |
| | ) | |

COMES NOW, the Petitioner, by and through his attorney undersigned, and pursuant to Rule 32.6, Arizona Rules of Criminal Procedure, submits his Rule 32 Petition. This petition is supported by the attached Memorandum of Points and Authorities.

RESPECTFULLY SUBMITTED this 25th day of January, 2018.

HARRIETTE P. LEVITT
Attorney for Petitioner

LAW OFFICE OF
HARRIETTE P. LEVITT, PLLC
*Attorney at Law*

## MEMORANDUM OF POINTS AND AUTHORITIES

**FACTS:**

Following a jury trial Petitioner was convicted of first-degree felony murder, a Class 1 felony; conspiracy to commit possession of narcotic drugs for sale, a Class 2 felony; and conspiracy to commit armed robbery, a Class 2 felony. He was sentenced to concurrent terms of 15.75 years on each of the conspiracy charges, based upon his status as a category three offender. Consecutive to those sentences, the court imposed a sentence of 25 years to life on the felony murder conviction.

The facts which gave rise to Petitioner's convictions are as follows: according to the testimony at trial, Elsy Valenzuela, Vanessa Bravo, Fabian Peña, Petitioner and codefendant Manuel Bustamante were all involved in a conspiracy to procure and sell methamphetamine and heroin. Elsy and Manuel were the procurers, whereas Vanessa, Fabian and Petitioner were among their friends who would buy the drugs from them for their own use and/or resale.

In the course of events, Elsy obtained a large quantity of heroin which she entrusted to her cousin Vanessa to store. Vanessa supposedly hid the drugs at the home of her boyfriend's parents. On April 18, 2012, Manuel secured a buyer for the heroin. He and Elsy made numerous attempts to contact Vanessa in order to retrieve the heroin. Vanessa was avoiding them, and throughout the day Elsy and Manuel, together with their cohorts, tried to track her down. Elsy also claimed that Petitioner was storing 40 pounds of heroin for Manuel.

At some point in the evening of April 18, 2012 Elsy and Manuel went to Vanessa's boyfriend's apartment to look for Vanessa, without success. They were told by the boyfriend's neighbor, Kendall Smith that Vanessa and her boyfriend were not there and that they should leave. Later, armed with baseball bats and a shotgun, Manuel and other associates returned to the boyfriend's apartment in a second attempt to locate Vanessa and retrieve the heroin. Kendall Smith confronted the group as they approached the apartment. He was severely beaten and subsequently died of his injuries. His roommate, Christopher Solis, ran into the apartment to get away from the confrontation.

Elsy Valenzuela and Fabian Peña both testified that Petitioner was part of that group, that he was involved in the various trips to locate Vanessa, and that he was present when Manuel

LAW OFFICE OF
HARRIETTE P. LEVITT, PLLC
Attorney at Law

1    Bustamante inflicted the fatal injuries on Mr. Smith. Elsy admitted at trial that she had stolen drugs

2    in the past, that she was a drug dealer and a drug user. She also testified that she had been smoking

3    between one and two ounces of methamphetamine a day, every day for five years since the age of

4    17. Elsy was originally charged with the same murder and conspiracy counts as Petitioner and

5    Bustamante. At the time of trial, Elsy was 22 years old. She testified in exchange for a plea-bargain,

6    wherein she faced probation in return for her testimony against Petitioner and Manuel Bustamante.

7        Fabian Peña also testified in exchange for a plea agreement. In return for his testimony,

8    Fabian faced probation as well. Fabian testified that he and Petitioner would sell methamphetamine

9    for Manuel and Elsy. Fabian testified that on the night of April 18, 2012 he received about 100 calls

10    from Manuel, Jonathan and Elsy. He testified that Manuel came to his apartment at 9:36 p.m. on

11    April 18th, together with Ruben Ornelas, Carlos and Jonathan. Manuel was carrying a shotgun.

12    Fabian testified that Manuel told him that he and the others went to pick up some heroin but were

13    met with sticks and bats, so they hit the other guy with bats. He also instructed Fabian to give him

14    and the others rides home in his car.

15        Petitioner offered alibi testimony from his sister, Jennifer Ochoa, his brother, Anthony

16    Ochoa, and his uncle, Ruben Ochoa, all of whom testified that Petitioner was at home asleep on the

17    living room couch on the night of the homicide. These witnesses were impeached with the fact that

18    they did not personally contact the police after Petitioner was arrested to inform them of the alibi;

19    that Jennifer Ochoa in particular refused to cooperate with a state investigator; and that Jennifer

20    Ochoa had written blogs about her brother's innocence, but never mentioned the alibi.

21        Following his conviction and sentencing, Petitioner filed a timely notice of appeal. He was

22    represented on appeal by Mary Perez, of San Diego, California. On appeal Ms. Perez successfully

23    challenged the multiple conspiracy convictions. Division One of the Arizona Court of Appeals set

24    aside the conviction and sentence for conspiracy to commit armed robbery. All other aspects of

25    Petitioner's convictions and sentences were upheld. The Court of Appeals held that Petitioner's

26    involvement in the attempts to recover the missing drugs established the predicate felony necessary

27    to sustain a felony murder conviction.

        Petitioner filed a timely notice of postconviction relief. Ms. Perez subsequently withdrew

- 3 -

LAW OFFICE OF
HARRIETTE P. LEVITT, PLLC
Attorney at Law

as his attorney.  Petitioner now seeks relief pursuant to Rule 32.1 Arizona Rules of Criminal Procedure.

**ARGUMENT:**

**1. Newly discovered evidence:**

As noted *supra*, Petitioner was convicted largely on the testimony of other co-conspirators who testified in exchange for favorable plea agreements.  All of these individuals were heavily involved in the use of drugs before, during, and after the events of April 18, 2012.  Petitioner has now obtained evidence that contradicts the testimony of these individuals. Manuel Bustamante, who was present, and convicted of the homicide has come forward to exonerate Petitioner.  Additionally, Fabian Peña has recanted his trial testimony and has explained the reasons for doing so (letter and affidavit of Manuel Bustamante, Exhibit 1 and 2; affidavit of Fabian Peña, Exhibit 3).

In order to be entitled to post-conviction relief on the ground of newly discovered evidence under Rule 32.1(e), a defendant must establish that the evidence was discovered after trial although it existed before trial; that it could not have been discovered and produced at trial through reasonable diligence; that it is neither cumulative nor impeaching, unless the impeachment evidence substantially undermines testimony which was of critical significance at trial such that the evidence probably would have changed the verdict or sentence; that it is material and that it probably would have changed the verdict. *State v. Saenz*, 197 Ariz. 487, 4 P.3d 1030 (App. 2000).  The defendant must prove newly discovered evidence by a preponderance of the evidence. *State v. Verdugo*, 183 Ariz. 135, 139, 901 P.2d 1165, 1169 (App. 1995).

As noted *supra*, Elsy Valenzuela was originally charged with first degree murder just like Petitioner and Manuel Bustamante.  As evidenced from Manuel Bustamante's statements, Elsy made a deal to provide testimony for for the State so that she would not face life in prison like her co-conspirators.  Elsy knew exactly what she needed to say in order to secure that deal.

As will be demonstrated more fully below, in Argument 3, Elsy was a highly impeachable witness by her own testimony and by statements of Fabian Peña and Manuel Bustamante, Elsy was always high on drugs.  Therefore, her ability to perceive the events around her and to remember them

- 4 -

1   a year later was highly compromised.

2       Fabian Peña, who was also under the influence of drugs during much of the relevant time

3   period states that he did not see Petitioner at all on April 18, 2012. He was confronted by Detective

4   Cross who kept insisting that he identify Petitioner as one of the people who was involved in the

5   search for drugs and the murder. Interestingly, the detective repeatedly referred to Petitioner as

6   "Jimmy", but Petitioner did not go by that nickname. As Fabian states in his affidavit, he agreed

7   with the detective in order to get him to leave him alone. (Exhibit 3)

8       Fabian was interviewed prior to the Bustamante trial by John Erickson, Mr. Bustamante's

9   attorney. Again, during that interview Fabian did not name Petitioner as one of the individuals who

10  had come to his home with Manuel Bustamante on the night of the homicide. After he identified

11  three people, Ruben, Carlos and Lucky, Mr. Katz, the prosecutor who was present at the interview,

12  pressed him to identify Petitioner as well. Mr. Katz stated, "what about Jimmy?". Then he changed

13  "Jimmy" to Jonathan, and Fabian agreed with him. Fabian now asserts, under penalty of perjury,

14  that Petitioner was not part of the group that came to his home and that Petitioner was not involved

15  in the homicide. (Exhibit 3)

16      The newly discovered evidence detailed above is not merely impeaching. It goes to the heart

17  of the case and, had it been available at the time of trial would probably have changed the verdict.

18  Manuel Bustamante who was the actual killer, is prepared to testify that Petitioner was not involved

19  in the homicide at all. His affidavit also explains how and why Elsy Valenzuela lied at Petitioner's

20  trial.

21  **2. Actual Innocence:**

22      Rule 32.1(h) provides that a convicted defendant is entitled to post-conviction relief if he

23  demonstrates by clear and convincing evidence that the facts underlying the claim would be

24  sufficient to establish that no reasonable trier of fact would have found the defendant guilty of the

25  underlying offense beyond a reasonable doubt. A claim of actual innocence is not subject to

26  preclusion. *State v. Swoopes*, 216 Ariz. 390, 166 P.3d 945 (App.Div.2, 2007).

27      Evidence from Fabian Peña that he testified falsely during Petitioner's trial constitutes

- 5 -

1   evidence of actual innocence. Evidence from the convicted killer, Manuel Bustamante, in the same

2   case exonerating Petitioner also constitute evidence of actual innocence. Moreover, Bustamante did

3   not just suddenly come forward with his statement. He contacted Petitioner while his own case was

4   still pending on appeal to offer to tell the truth about what happened. (Exhibit 2). The affidavits

5   of these two individuals cast serious doubt on the credibility of Elsy Valenzuela and Vanessa Bravo.

6   Christopher Solis, the victim's friend who was present at the homicide testified that he had never

7   seen Petitioner and could not identify him as one of the individuals who assaulted his friend.

8   Petitioner's family members all testified that Petitioner was at home on the night of the homicide.

9   The evidence submitted by Manuel Bustamante and Fabian Peña constitutes evidence of actual

10   innocence.

11

12   **3. Ineffective Assistance of Counsel**:

13        The standard for determining whether counsel is effective is whether, under the

14   circumstances, the attorney showed at least minimal competence in representing the criminal

15   defendant. *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *State*

16   *v. Schultz*, 140 Ariz. 222, 681 P.2d 374 (1984); *State v. Watson*, 134 Ariz. 1, 653 P.2d 351 (1982).

17   Under this standard our courts have held that whether defense counsel showed minimal competence

18   depends on whether his acts or omissions are a crucial part of the defense. In addition, counsel's

19   performance will be judged upon the basis of reasonableness under the prevailing professional

    norms. *State v. Nash*, 143 Ariz. 392, 694 P.2d 222 (1985).

20        The defendant who alleges he was denied effective assistance of counsel must "first establish

21   that counsel's errors or omissions reflect a failure to exercise skill, judgment or diligence of a

22   reasonably competent attorney, and second, defendant must establish that he was prejudiced by

23   counsel's errors or omissions." *United States v. Hoffman*, 733 F.2d 596 at 602, cert. denied, 105 S.

24   Ct. 521, 469 U.S. 1039, 83 L. Ed. 2d 409 (9th Cir. 1984).

25        As noted in the Statement of Facts, *supra*, Petitioner's relatives testified regarding his alibi

26   but all were impeached. Trial counsel, David Thorn was told of Petitioner's alibi shortly after he

27   was appointed to represent Petitioner. (Exhibit 4, Affidavit of Matthew Brooks) Instead of promptly

- 6 -

1  filing a notice of alibi defense pursuant to Rule 15.2 Arizona Rules of Criminal Procedure, he waited

2  until several weeks before the trial to do so. He even instructed his investigator to hold off on

3  interviewing the alibi witnesses until a few weeks before trial. (Exhibit 4) Therefore, when Mr. Katz

4  questioned Jennifer Ochoa about her failure to contact the police about Petitioner's alibi, it appeared

5  as if the alibi defense had been recently concocted.

6      Additionally, Mr. Thorn never interviewed any of Petitioner's relatives about the alibi. He

7  did not prepare them for interviews by a representative from the State; in fact he did not even tell

8  them to expect to be contacted by an investigator. (Exhibits 5, 6 and 7) The result at trial, was

9  disastrous. The witnesses were successfully impeached with the fact that there had been no

10  cooperation with the State's attempts to discuss their alibi evidence. Mr. Thorn did not even attempt

11  to obtain Jennifer Ochoa's time cards from work in order to confirm what time she left work on the

12  night of the murder. The State had obtained that evidence, but did not introduce it. The failure to

13  interview witnesses constitutes ineffective assistance of counsel. *Waston, supra.*

14      At the time of the homicide Petitioner was under Intensive Probation Supervision. He was

15  subject to a firm schedule, unannounced searches and surveillance. Mr Thorn did not make any

16  effort to obtain Petitioner's probation records to determine whether the Probation Department could

17  account for Petitioner's whereabouts during the time in question. Evidence that Petitioner was

18  subject to a strict schedule would have supported his alibi. Additionally, evidence that he was subject

19  to warrantless searches would have negated Elsy's claim that Petitioner was storing drugs for

Manuel.

20      Finally, Mr. Thorn was well aware that the State's key witnesses, Elsy Valenzuela, Vanessa

21  Bravo, and Fabian Peña were all drug addicts. Elsy Valenzuela in particular had a very serious drug

22  addiction and was high most of the time.

23      As an experienced defense attorney Mr. Thorn should have been prepared to counter the

24  witnesses' credibility by establishing how extensive drug use affects a witness's ability to perceive

25  and recall events. A pharmacologist should have been retained as an expert witness to testify to the

26  long term effects methamphetamine and heroin have on the brain. Such evidence is not difficult to

27  procure. (Exhibit 8)

LAW OFFICE OF
HARRIETTE P. LEVITT, PLLC
*Attorney at Law*

One thing is certain with regards to the testimony and statements of Elsy Valenzuela, and that is that she smoked a lot of meth and frequently. She testified to smoking an ounce or two of meth a day with her friends every day for five years since the age of seventeen. She said the longest she stayed awake, high on meth, was seventeen days straight. To put that in perspective, the Guinness World Record for the longest time staying awake without stimulants is eleven days and twenty-five minutes.[1] Abusers of meth, according to the National Institute on Drug Abuse, may exhibit anxiety, confusion, insomnia, and mood disturbances. Chronic methamphetamine abuse severely changes structural and functional changes in areas of the brain associated with memory and emotion.[2] The use of meth, results in the neuronal death, generally, and affects areas of the brain that are imperative to the person's abilities to remember and learn new information, move, direct attention, visualize objects in space, remember non-verbal material, reason, and perform cognitive functions, according to American Addiction Centers.[3] As for context with how much meth Elsy would smoke a day, one to two ounces of meth is 28.3495- 56.699 grams. According to PBS Frontline, the average amount of meth in one hit is 0.25 grams[4], meaning that Elsy and her friend would ingest between 113 and 226 hits of meth a day, every day. (Exhibit 8)

Petitioner's relatives have presented sworn affidavits that Mr. Thorn did not disclose them as alibi witnesses until shortly before trial; that he could did not consult with them on the preparation for trial and cross-examination and their ability to pinpoint the date for Petitioner's alibi. Their affidavits are supported by the affidavit of Mr. Thorn's investigator. Additionally Mr. Thorn provided ineffective assistance of counsel by failing to adequately investigate and present an expert witness to challenge Elsy Valenzuela's credibility on the basis of her constant drug use. As a result,

---

[1]Crew, B. (2015, November 16). Watch: Here's What Happened When a Teenager Stayed Awake For 11 Days Straight

http://www.sciencealert.com/watch-here-s-what-happened-when-a-teenager-stayed-awake-for-11-days-straight

[2] Abuse, N. I. (N.d.). What are the long-term effects of methamphetamine abuse? Retrieved December 18, 2017,

https://www.drugabuse.gov/publications/research-reports/methamphetamine/what-are-long-term-effects-methamphetamine-abuse

[3]Effects of Crystal Meth on the Brain and Central Nervous System, (n.d.). Retrieved December 18, 2017, from

https://americanaddictioncenters.org/meth-treatment/effects-on-the-brain-and-cns/

[4] Frequently Asked Questions. (N.d.0. retrieved December 18, 2017, from https://www.pbs.org/wgbh/pages/frontline/meth/faqs/

1    Petitioner was convicted of a crime he did not commit.

2    **CONCLUSION:**

3        Petitioner has presented a prima facie case establishing newly discovered evidence, actual

4    innocence and ineffective assistance of trial counsel. He is entitled to an evidentiary hearing

5    following which he will be entitled to have his convictions and sentences vacated.

6        In conclusion, it is respectfully submitted that Petitioner is entitled to have his conviction

7    reversed, his sentences vacated, and the matter remanded for a new trial.

8

9        RESPECTFULLY SUBMITTED this 25th day of January, 2018.

10

11

12    Harriette P. Levitt
    Attorney for Defendant/Petitioner

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

**LAW OFFICE OF
HARRIETTE P. LEVITT, PLLC
Attorney at Law**

- 9 -

<u>VERIFICATION</u>

1

2  STATE OF ARIZONA        )
                           ) ss.
3  County of Pima          )

4

5          HARRIETTE P. LEVITT, being first duly sworn upon her oath, deposes and says:

           That she is the attorney for Petitioner in the above entitled and captioned matter;

6          That she has read the foregoing Petition for Post-Conviction Relief and knows the contents

7  thereof; that the information contained therein was provided to her by Petitioner; that the same are

8  true and correct to the best of her knowledge, information and belief; and that pursuant to A.R.S.

9  Section 13-4235, this Petition contains all known grounds for relief under Rule 32.

10

11                                              _____
                                                HARRIETTE P. LEVITT
12

           SUBSCRIBED AND SWORN TO before me this 25th day of January, 2018, by
13
   HARRIETTE P. LEVITT, attorney for Petitioner herein.
14

15

16                                              _____
                                                Notary Public
17

18  Copy of the foregoing mailed this
    25th day of January, 2018, to:

19  Yuma County Attorney
    250 W. 2nd St., Ste. G
20  Yuma, AZ 85364

21  Jonathan Ochoa
    #292451
22  ASPC Florence - Central
    P.O. Box 8200
23  Florence, AZ 85132

24

25

26

27

OFFICIAL SEAL
KRISTY NICOLE VALENZUELA
Notary Public - Arizona
PIMA COUNTY
My Comm. Exp. 01/26/2021

## **CERTIFICATION**

I certify that this petition includes all the claims and grounds for post-conviction relief that are known to me, that I understand that no further petitions concerning this conviction may be filed on any ground of which I am aware but do not raise at this time, and I declare under penalty of perjury that the information contained in this form and in any attachments is true to the best of my knowledge or belief.

_____          _____
Date                                 Defendant

***Signed certification to follow***

LAW OFFICE OF
HARRIETTE P. LEVITT
Attorney at Law

# EXHIBIT 1

IN THE SUPERIOR COURT OF THE STATE OF ARIZONA

IN AND FOR THE COUNTY OF YUMA

STATE OF ARIZONA,                           )

      Plaintiff/Respondent,          )    No. CR201200498

      vs.                                         )

JONATHAN OCHOA,                             )    **AFFIDAVIT OF**
                                              )    **FABIAN PENA**

      Defendant/Petitioner.          )    (Assigned to Judge Rouff)
_____    )

STATE OF ARIZONA      )
                           ) ss.
COUNTY OF YUMA      )

Fabian Pena being first duly sworn upon his oath, deposes and says:

1. I testified at Jonathan Ochoa's trial as a witness for the State.

2. At the time of the murder of Kendall Smith and for a long time afterwards I, along with most of the state's witnesses, was heavily involved in using drugs. ElsyValenzuela, in particular was always high on drugs.

3. Jonathan Ochoa was not involved in the murder of Kendall Smith. When I was interviewed by Detective Cross, he kept pushing me to name Jonathan as one of the people involved in the murder. As a result of being pressured repeatedly, and because of my state of mind at the time, I agreed with whatever the detective wanted me to say.

4. I gave an interview to Attorney John Erickson who represented Manuel Bustamante, before Manuel's trial. During the interview I made a number statements about Manuel, Elsy

Valenzuela and others. I stated that Vanessa told me that Kendall Smith was killed because he was left outside when the police tried to chase Manuel and others into the apartment.

5. During that period of time, I was associated with Manuel Bustamante selling drugs.

6. On April 18, 2012 I was sick with a cold and I had slept all day. Later that night Manuel Bustamante showed up at my home with other people. The people I identified were Ruben Ornelas, "Lucky" and Carlos. Mr. Katz, the prosecutor then began asking me about "Jimmy" and whether "Jimmy" Ochoa was there. Jonathan does not go by the nickname "Jimmy".

7. I didn't physically see Jonathan at my house and I told Mr. Katz that. I also said that there were a few people who stayed outside the door. None of them were Jonathan.

8. I never saw Jonathan Ochoa at my house on the night of the murder. Both the detective and the prosecutor pressed me to say that Jonathan was one of the people involved. Because I had my own legal problems at the time, I simply agreed with them.

9. To my knowledge Jonathan Ochoa had nothing to do with the murder of Kendall Smith.

10. I have not had any contact with Jonathan Ochoa since his trial. I do not intend to have any contact with him in the future.


Further affiant sayeth not.

_____
Fabian Pena

SUBSCRIBED AND SWORN TO before me this _____ day of _____, _____.


_____
Notary Public

My Commission Expires:

_____


   ***Signed affidavit to follow***

# EXHIBIT 2

1
2
3
4
5
6
7          IN THE SUPERIOR COURT OF THE STATE OF ARIZONA

8               IN AND FOR THE COUNTY OF YUMA

9    STATE OF ARIZONA,                    )        No. CR201200498
                                          )
10          Plaintiff/Respondent,         )
                                          )
11   vs.                                  )        **AFFIDAVIT OF**
                                          )        **MANUEL BUSTAMANTE**
12   JONATHAN OCHOA,                      )
                                          )
13          Defendant/Petitioner.         )        (Assigned to Judge Rouff)
     _____ )

14
15   STATE OF ARIZONA        )
                             ) ss.
16   COUNTY OF PINAL         )

17   Manuel Bustamante being first duly sworn upon his oath, deposes and says:

18   1. I am the codefendant of Jonathan Ochoa in the above referenced case.

19   2. Early in this case, I told my attorney, John Erickson, that Jonathan Ochoa was not present

20   at the time of the murder. I asked my attorney to forward this information to Jonathan's

21   attorney. To my knowledge he did not do so.

22   3. After my trial I saw Jonathan in the Yuma County Jail. I told him that I would be willing

23   to testify on his behalf at his trial. Jonathan's lawyer did not attempt to have me testify.

24   4. I knew that Jonathan was on probation, and possibly on intensive probation, at the time

25   of the murder. During this same period of time I was selling methamphetamine and I had a

26   stash of about 40 pounds. Many people wanted to know where I was storing the meth, but

27   I did not want anyone to know where it was because I did not trust anyone. I told Elsy

1    Valenzuela and other people different stories of where I was storing the meth. At one time
2    I told Elsy that I had stashed it at Jonathan's house. This statement was false. In fact, I
3    thought it was ludicrous for anyone to believe me, because Jonathan was on probation and
4    I knew that the probation officers could search his house without a warrant at any time.

5    5. I did not see Jonathan Ochoa at all on April 18, 2012, the day of the homicide. Jonathan
6    was not with me at all when I went to the victim's apartment building that night. Jonathan
7    had nothing to do with the homicide.

8    6. Elsy Valenzuela testified against me at my trial. At one point, Elsy contacted me by
9    phone while I was incarcerated and told me that she had also been charged with felony
10   murder so she cooperated with the prosecutors in exchange for a better plea-bargain.

11   7. During the time period before and after the homicide Elsy was very much under the
12   influence of drugs. She either did not recall what happened or she mistook Jonathan for
13   someone else who actually was there. I believe she mistook Jonathan for Victor Peña.
     Further affiant sayeth not.

14
15
16                                              Manuel Bustamante
17
     SUBSCRIBED AND SWORN TO before me this _____ day of _____, _____.
18
19
20                                              Notary Public
21   My Commission Expires:
22   _____
23
24       ***Signed affidavit to follow***
25
26
27

- 2 -

This letter is to whom it may concern.

I had explained to my attorney at the time Mr. Erickson was my trial attorney. that I was willing to testify the truth at Jonathan Ochoa trial.

See there were alot of testimony said about Mr. Ochoa but the people testifing knew only what I would tell then which were half storys because I didnt trust them.

Sadly they remember me telling them that I had to go to Mr Ochoas house to pick up drugs.

Which really it would go to some other place with other people

Also the night of April 18 2012 Elsy Valenzuela and myself know that, that night we had no contact with Mr Ochoa. She was to high to remember and think Mr Ochoa was another person

And as I said I was and still willing to testify the truth on this matter.

I was not contacted by Trial Attorney to give my testimony.

And my Attorney knew I wanted to because I explain to him that

what Elsy Valenzuela & Fabian Peña
were testifying was not true


Manuel Bustamante


State of Arizona )
County of ~~Yuma~~ Pinal


Subscribed and sworn/affirmed before me
this 18/ day of November 2015
by     M   B

M. ESPINOZA
Notary Public - State of Arizona
PINAL COUNTY
My Commission Expires
August 8, 2017

Notary Public

# EXHIBIT 3

(DRAFT)

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27

IN THE SUPERIOR COURT OF THE STATE OF ARIZONA

IN AND FOR THE COUNTY OF YUMA

| | | |
|---|---|---|
| STATE OF ARIZONA, | ) | No. CR201200498 |
| Plaintiff/Respondent, | ) | |
| | ) | |
| vs. | ) | **AFFIDAVIT OF** |
| | ) | **ANTHONY OCHOA** |
| JONATHAN OCHOA, | ) | |
| | ) | |
| Defendant/Petitioner. | ) | (Assigned to Judge Rouff) |
| | ) | |

STATE OF ARIZONA      )
                                          ) ss.
COUNTY OF YUMA      )

Anthony Ochoa being first duly sworn upon his oath, deposes and says:

1. On the day of the murder, I went to practice basketball with my friend, Everett McKinney. We were in a basketball league at the time and we would practice just about every night.

2. On the evening of April 18, 2012 Everett and I met together at about 5:00 PM. We practiced playing basketball and return to my house at about 8:30 PM. When we arrived home, we decided to play X- Box. The game was located in the living room. Jonathan was asleep on the couch the entire time that we were playing.

3. I tried to wake Jonathan and tell him to go to his room and sleep there, but Jonathan did not wake up. Jonathan is a hard sleeper and the noise we were making did not bother him. We played until almost midnight. There was no school the next day because it was Easter break.

4. Before I got home I texted my friend Fabian Rodriguez and told him that Everett and I were on our way to my house  Fabian joined us at the house and played X Box with us.  In addition to us, my grandmother Jennie, my uncle Ruben and my sister Jennifer's children were there as well.

5. I testified at Jonathan's trial to the above facts.  Jonathan's attorney, David Thorn did not meet with me before hand to discuss my's testimony.  I was not prepared for any cross-examination.  At Jonathan's trial the prosecutor suggested that since I played basketball every night and usually came home to play X Box, the incident I described could have happened on another day.  However, I am positive that Jonathan was asleep on the couch on April 18, 2012, because the night before, Everett's younger brother Seth was with us.  When we came into the house on that occasion, Jonathan's daughter was asleep on the living room couch (the same couch Jonathan was asleep on the following night, April 18, 2012).

6. As we walked in to the living room, Jonathan came into the living room from the back of the house and told me that my friends were going to have to leave.  Jonathan and I had a bit of an argument about my friends.  At that time Everett and his brother Seth decided to leave.  The next night, because of what happened on the evening of the 17th, Seth decided not to go to my house and join us in playing X Box.

7. David Thorn never talked to me about how I was able to pinpoint the date that Jonathan was asleep on the living room couch.  He did not make any attempt to have me pinpoint the date in support of Jonathan's alibi after the prosecutor cross-examined me.

8. The prosecutor also asked me about the fact that I did not contact the police to tell them about Jonathan's alibi.  I did not know that I was supposed to contact the police.  My family had contacted Mr. Thorn and gave him the alibi information shortly after he was appointed to represent Jonathan.


Further affiant sayeth not.

Anthony Ochoa                               1/22/18

- 2 -

1

2  SUBSCRIBED AND SWORN TO before me this 22ⁿᵈ day of January, 2018

3

4  _____
   Notary Public

5

My Commission Expires:

6

7  June 29, 2018

8

TIFFANY CASTILLO
Notary Public - Arizona
Yuma County
My Commission Expires
June 29, 2018

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

- 3 -